First case is 05-3184 Griffiths v. Merit Systems Protection Board. Mr. Berry. Thank you, Your Honor. May it please the Court, my name is John Berry and I represent the petitioner Peter Griffiths who is here on a case involving jurisdiction of the Merit Systems Protection Board. Essentially the argument in this case, while it has different facets, boils down to whether or not an individual who falls under 10 U.S.C. 1586 as part of an interchange agreement is permitted to take an action to the Board. This has been a very complex area of law as I've learned in the last several months and weeks and I believe that the Board erred when they ratified the Administrative Judge's decision essentially equating pay retention in general with the belief that no appeal rights would best at the Merit Systems Protection Board under 5 U.S.C. 5366. Well, you would agree, would you not, under your theory that your client has to establish for purposes of jurisdiction that sort of this is like a pretext case? In other words, that they really didn't, your argument is that they didn't really transfer him back because he didn't meet the getting along with people overseas part, that it was pretext for unacceptable performance, correct? Unacceptable performance in addition to a reduction in grade on his face under 7512. Mr. Griffiths was, signed an agreement to be in his position for 36 months. But you're claiming that this is an action, the reason the MSPP has jurisdiction is because this was indeed an action for unacceptable performance, correct? That was one of the arguments espoused. One of the other arguments, the main argument espoused is the reduction in grade. So your position that even if they sent him back because he didn't meet the criteria, whatever it was, not getting along with people overseas, that because it resulted in a reduction in grade he would still be able to appeal it to the Board? Yes, Your Honor. Because? Because it would be a reduction in grade covered under Chapter 75. Because he went from, he went, while he did receive pay retention, he did not receive grade retention. More than pay retention, his salary went up at each step, didn't it? His salary increased every time, he went abroad it increased, he came back it increased, right? That's correct, Your Honor. So your position is that the Board has jurisdiction over any cases in which someone's grade and not pay is reduced, irrespective of whether the action taken by the agency was based on misconduct or unacceptable performance? The exclusion would be position classification, reduction in force, or if opium came out with other regulations under 5 U.S.C. 5365, which would curtail any rights under 5 U.S.C. 5356. So when the Board gets jurisdiction, so what are they adjudicating under that theory? If it wasn't unacceptable performance, the issue was purely whether or not he didn't meet the criteria overseas, so the Board has to adjudicate whether or not he met that criteria? I believe so, Your Honor. I believe that you would have to, on the basis of what transpired in the record in terms of the reasons, I believe one of the reasons stated was his inability to handle clerical issues or interaction with other office staff. It almost read to me like it was an adverse action, you know, the type I typically handle, and it's the position of the petitioner that the Board, at least under the way I read the current state of the U.S. Code and CFR, would have jurisdiction to determine the merits of this before Mr. Griffiths would conclusively be put back to a GS-11 position. What do you want as a remedy in this case? As I read the briefs, it sounded like he wanted to go back to Naples. Yes, Your Honor, it's a multifaceted remedy. Well, he wants to go back to Naples, but the term for his tour of duty in Naples ended last month, January of 2006. That job isn't there anymore, and this Court has no authority to assign federal employees to positions that don't exist. I mean, we can't create jobs and send people to jobs. We can't even send people to jobs that are already in existence. This one isn't, so that's off the table. What else could you possibly want? The GS-12 grade level. His salary went up. Yes, and that's part of it. It's pay retention and grade retention. He's primarily interested in the grade retention aspect of this case, Your Honor. But he doesn't get to retain it in the future. I mean, as Judge Rader pointed out, the term has already ended. So is he seeking a change retroactively so somebody in his personnel form will say that he was a GS-12 for the past few years rather than GS-11? He is, Your Honor. And as I handle a lot of these types of cases at the lower levels, at least one of the particular problems that I come across is that in the personnel file folders, there are a lot of documents when someone is considered for promotion or advancement, it's important to see oftentimes what levels they've held and how they've looked for particular assignments. So he wants to be a 12 through the end of what would have been his tour, and then he accepts being 11? He would have had the opportunity for possible promotion. Well, he signed an agreement, though, that when he came back, he would put back to the grade 11. Yes, Your Honor. So he wants the 12 for that brief period or relatively brief period, and that he accepts the fact that he will be a grade 11? According to the terms of the agreement. There's no brief period anymore, is there? That expired already. His period as a 12 in Naples, Italy expired last month, January 2006. There is no longer a GS-12 position for which he qualifies. So that's off the table, too. What can you possibly be looking for as a remedy? Well, at the minimum would be having his records changed to reflect the—well, having the ability. If it's remanded to the board, then able to retroactively change his grade levels from 11 to 12. He was changed from 11 to 12 when he went to Naples, and then he came back to his position, to the position that he agreed he would come back to. I'm struggling really hard now to figure out what you're lacking. Exactly. I mean, in terms of the paperwork in the employee's file, it means a lot. I know it means a lot to Mr. Griffiths. But he wasn't in Naples. Only when you're in Naples can he be a 12. That was the 12 position. Now, we can't go back and say we want you to have been in Naples when you weren't in Naples. We can't rewrite history. We can change his personnel records to reflect that he served as a 12 during that period of time. But your purpose is, I guess hypothetically, the only rationale I can understand that you would have for that was next year if he goes to apply for another job at the Customs Service, so that he can say to them, I'm qualified for this other job because I've had three years' experience as a GS-12. But he hasn't had three years' experience as a GS-12. I mean, that would be fiction, as Judge Rader said. I mean, if you're saying he wants it so he can use that experience to qualify him for some future job, since he hasn't in reality had that experience, how could he purport to then represent to someone that he has? Well, Your Honor, there's also the issue of him being able to contest some of the issues that were out there for his movement. I mean, a lot of his paperwork does go into an official personnel folder in which, you know, Contest what issues? I mean, again, unless you've got a reduction in grade or pay, you're not here on anything that we can adjudicate. And we've already established that neither one of those is at stake in this case. The position that gave you the greater grade no longer exists. So at this point, that's moot, that's gone. If it ever existed as an issue, it's gone. Prey was retained. There's no issues anymore, is there? What could possibly remain as an issue over which this Court has jurisdiction? Well, I believe that the GS-12 position, while it's now... It no longer exists. The GS-12 was linked to a position that no longer exists. That terminated on January of 2006. So that's off the table in terms of what this Court can provide and in terms of providing you with jurisdiction. That's over. So where's your jurisdiction? Why are you here? I'm here because at the time he was reduced in grade, and he was reduced in grade by going back to his position in Florida as a GS-11. I know litigation takes a long time, and we're some ways down the period, and I'm not trying to... I just want to respond to you as best as I can. He wants the ability to challenge what he believes had jurisdiction at the time, and still does, even though there's been some time and the agreement has expired based on at least existing case law, which is a little bit confusing. It focuses mainly on position classification and reductions in force. And I believe that in terms of retroactivity, it's an important issue for my client. And I believe there is jurisdiction. You raise a lot of very important points, Your Honor. But in terms of it being retroactive on his record, if we were here a year ago, it would be a different story in terms of these agreements would have lasted. He'd be in the middle of his agreement. He could go back in theory. And so I do think that this court has jurisdiction, but I also see that I see some of your important points in the argument. Should we hear from the government now? Yes. Thank you. Mr. Carney? May it please the Court. Some of the issues I had written down to speak about have already been spoken about. I'm going to try to make two points. The provision of pay retention when his overseas assignment was terminated cuts off his appeal rights, hence he cannot appeal his return from GS-12 to GS-11. So he lost his appeal rights through the provision of pay retention. But let me ask you, if indeed under the agreement they said you can send him back if he's not getting along with the folks overseas, but it didn't cover on instances of poor performance, of sending him back for poor performance, assuming the APC hypothetically had indeed sent him back from Naples because they concluded that he was performing poorly, would that be an issue that you would concede would be covered by the MSPB, would be appealable to the MSPB? I mean, if he could establish that on a jurisdictional basis, what's the problem? Well, in this case the administrative judge didn't really give the petitioner the opportunity to establish that. He looked at the memo, but ruled that it was a jurisdictional issue. And I think 5366 says, any action which is the basis of an individual's entitlement to benefits under this chapter shall not be treated as appealable. And the action is the agency's action terminating his overseas interchange, a temporary position. Where is the ability of this court to decide whether the Navy was wrongful in sending him back? To the extent that there may be a prohibited personnel practice here, the Navy saying one thing but doing it for another reason, I think that the petitioner may have been able to go to the office of special counsel and then perhaps it would have gone forward from there. And it's not an appealable action, but if he suspects a prohibited personnel practice, that may have been his route to pursue it. Well, just hypothetically. I'm a supervisor, and one of my employees, I say, you're performing poorly. So I'm going to allow you to keep your pay, but I'm going to demote you from a GS-9 to a GS-5 because your performance is unacceptable. And for whatever reason, I'm allowing you to save pay. Would the board have jurisdiction over that based on a Chapter 43 action? Well, presumably that employee wouldn't be under 10 U.S.C. 1586, which is what gave the supervisors in Naples the authority to do what they did, to terminate his temporary overseas promotion and send him back. So that if it was just a government employee anywhere, and your supervisor said, for reasons other than performance, I'm reducing your grade, that would be an action that would be appealable. So even when the pay is retained, if you reduce it in a grade based on performance. You're citing the Atwell for that, right? But Atwell's case is pretty well confined to position reclassification, right? There's no position reclassification here. The question is whether he was wrongfully sent home from Naples. I think that determination is one that's not reviewable by the board. It's an action taken by the agency under the pay retention statute under 10 U.S.C. 1586. It's not reviewable. So the agency could enter into an agreement, we'll send you to Naples, and breach that completely. He gets over there and his supervisor doesn't like him. Let's make it worse. The supervisor discriminates on the basis of gender or sex or religion or something and sends him back home. What do we do in that instance? On the discrimination issue, the petitioner did in this case go to the EEOC. And I'm not sure that cutting off his appeal rights under Chapter 75 would necessarily affect his ability to appeal a decision based on discrimination. So I think under those circumstances, he would have had a case before. What if it's just wrongful other than discriminatory? As I said earlier, I think his remedy, and this is a prohibited personnel practice, would be to go through the Office of Special Counsel. Didn't the provision say, I mean, it allowed the agency to send him back if it concluded he couldn't get along with the overseas people, right? For reasons other than unacceptable performance. Doesn't that suggest that the agreement was that we can't, in instances, that we don't have the same leeway to just send you back based on a discrimination of not getting along with people overseas if it's an instance of unacceptable performance, suggesting that if it's unacceptable performance, then we follow the regular procedures. That's what the AJ seems to have also agreed with. Yes. It may be that, as this is a temporary promotion, the determination of a temporary promotion is in itself not appealable to the board. What says that? I know there's some language about temporary promotions, but I thought it was for something shorter than a three-year decision. This is a 36-month thing, right? It's discussed in the Walton decision, and specifically it cites to 5 CFR 752.401. The citation has changed over time, but the current provision says, action that terminates a temporary or term promotion and returns the employee to a position from which temporarily promoted or to a different position of equivalent grade and pay, if the agency informed the employee that it was to be of limited duration. Certainly this was a three-year overseas position known to be of limited duration, temporary. For some reason, I may be wrong, but I just have a vague recollection that temporary promotions that wouldn't be covered or subject to MSPB procedures were something of a lesser duration than 36 months. You don't know of anything there? I didn't see that in the statute. I'm sorry, in the regulation. This was for a contract, right? This agreement he signed was a contract? Yes, sir. Could he have alleged a breach of that contract and have it reviewed, similar to a breach of a settlement agreement? Perhaps, but not before the MSPB. Where? I mean, the settlement agreement was on the MSPB, right? It was in a settlement agreement. In a case of settlement, it may have led to a breach. The settlement is entered into the record before the board. Yes. It's a contract. This is a contract. Could he allege it? Could he take that to the board and say it was breached because they used different, they used unauthorized reasons to do that? I'm not sure that a contract between the employer and the employee can create board jurisdiction to review that contract. Do you have any other questions? Let me ask you one question. Part of the AJ's analysis was, the reason I find this is not an acceptable performance is because the agency didn't use the procedures for an acceptable performance. Do you agree with or understand that reasoning? Isn't it a bit circuitous? There is some security in that reasoning, sure. But I think, I don't know that that affects his finding that it's just not something that was subject to his review. And the other thing, this question I have is, I mean, there's a timeliness issue hanging out there, right? Yes, Your Honor. And did the government just, did somebody make a decision here, we're going to take the difficult, major, significant, statutory construction issue first, rather than dealing with an issue that's relatively straightforward and simple? The initial decision does not explain why the judge ruled on one and not the other. There may have been some issues as to when the petitioner discovered what he thinks the agency was up to. He learned of that during the Pentecost EEOC case. Perhaps he filed within 30 days of finding that information in the EEOC case. So that may have been, I'm just summarizing, that may have been why the agency. Yeah, but it's at least possible that we would adjudicate this, we'd write an opinion that deals with all these statutory construction issues, and then it would go back and the board would not have jurisdiction in any event on timeliness. That issue is still hanging out there. Yes, Your Honor. Thank you. If it pleases the Court, Your Honor, I wanted to address the timeliness issue real briefly with you. It was not ruled upon in the response to the show-cause order by the administrative law judge. Several bases were ruled upon by the administrative law judge, particularly the voluntariness argument and the due process argument. So the way I've always practiced MSPB cases, and I've done quite a few, the show-cause order ruling, if you get past the show-cause order ruling, you get to the next step. That's not to say that they couldn't try and bring up another argument,  at least what we're hearing. The other important point here is that... It's unclear from the record, Your Honor. The administrative judge ruled that there was no jurisdiction on the basis of several issues that we've laid out but did not address the timeliness issue. Mr. Griffiths alleged that he found out a lot of this information as a result of the CEOC complaint, which, in my mind at least, that may have been enough to satisfy the administrative law judge, but we don't know. We don't know at this point. But the important point for Mr. Griffiths is... I mean, this isn't one of those cases that's a big... You can get everything in the world in terms of remedy, but for him and for his family in Florida, it means an awful lot to have his record clear. I mean, there are a lot of bad things that went into his record, and he would just like the ability to challenge them. He believes he does. He believes he's not precluded under Title 5, 5366B because it was never applied to these overseas interchange agreements under 10 U.S.C. 1586, and that statute came before the Reform Act of 1978. And so I would think that if Congress, at least in the legislative history that I had reviewed, had intended this to apply or to take overseas interchange agreements out of this sort of system, that they might have put it in there or at least referenced it. They did allow OPM to make regulations, and OPM did make regulations, but not in reference to these sorts of agreements. And I appreciate the court's time. Thank you. This is the stage of the committee.